UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Michael Barca,

   Plaintiff,

  v.         Civil Action No. 2:13-cv-68

Commissioner of Social Security,

   Defendant.

## **OPINION AND ORDER**
(Docs. 9, 12)

  Plaintiff Michael Barca brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security ("Commissioner") denying his application for disability insurance

benefits.  Pending before the Court are Barca's motion to reverse the Commissioner's

decision (Doc. 9), and the Commissioner's motion to affirm the same (Doc. 12).  For the

reasons stated below, the Court DENIES Barca's motion, and GRANTS the

Commissioner's motion.

## **Background**

  Barca was 49 years old on his alleged disability onset date of June 28, 2008.  After

graduating from high school, he served in the Marines for approximately four years.  (AR

35, 1087, 1283–84.)  Thereafter, he was an emergency medical technician for

approximately eight years.  (AR 238.)  Since 1996, he has held many jobs, including a

road flagger, a security officer, a sales associate, a cook, a teacher's aide, a construction worker, and a taxi driver.  (AR 36, 41–43, 238, 1094–95.)  He claims he has been unable to hold most of these jobs for more than a few weeks.  (AR 1283, 1287.)

As a child, Barca was physically abused by his father.  (AR 1079, 1283, 1286.) He was married in 1994, and he and his wife had three children and adopted a fourth. (AR 523, 1283, 1289.)  The couple had problems with their eldest son (AR 1283), and Barca told one of his medical providers that when this son was 14, he sexually molested the couple's then four-year-old son (AR 305, 344).  In July 2008, Barca was fired from his job as a security officer, which he had held for almost five years, due to his theft from a client.  (AR 256.)  In January 2009, Barca was charged with arson of the family residence.  (*Id.*)  Around the same time, Barca's marriage ended in divorce, largely due to Barca's economic and vocational instability and his anger issues.  (AR 1283.)  In 2011, feeling despondent from his divorce and estrangement from his children, Barca attempted suicide by overdosing on his medications.  (AR 1089–90, 1286, 1289.)  At that time, he was living with his brother-in-law and his family, including nine children.  (AR 40, 1098–99, 1105.)  In June 2012, Barca was living alone in an apartment subsidized by a Veteran's Affairs ("VA") housing program.  (AR 1074–75, 1289.)  He saw his children infrequently but was well connected with a local church and close with his sisters.  (AR 1286.)

Despite having gastric bypass surgery in 1998, Barca is morbidly obese.  (AR 479, 482, 1082–83, 1287, 1657.)  He suffers from depression, posttraumatic stress syndrome ("PTSD"), and cellulitis.  He has nightmares, which prevent him from sleeping through

the night.  (AR 1079, 1289.)  His cellulitis causes swelling in his legs if he sits or stands for extended periods, and his psychological problems result in problems concentrating and handling stress.  (AR 36–37, 1076–78.)

In February 2009, Barca filed an application for social security disability insurance benefits.  (AR 184–87.)  Therein, he alleged that, starting on June 28, 2008, he has been unable to work due to PTSD, anxiety, cellulitis, and depression.  (AR 186–87, 210.)  He explained that, due to these conditions, he gets confused, has trouble remembering directions, and cannot follow instructions.  (AR 210.)  Barca's application was denied initially and upon reconsideration, and he timely requested an administrative hearing.  On April 11, 2011, a hearing was conducted by Administrative Law Judge ("ALJ") Thomas Merrill.  (AR 30–71.)  Barca appeared and testified, and was represented by an attorney. A vocational expert ("VE") also testified at the hearing.  (AR 61–68.)  Soon after the hearing, the ALJ issued a decision finding that Barca was not disabled under the Social Security Act at any time from his alleged onset date through the date of the decision. (AR 12–23.)  Thereafter, the Appeals Council denied Barca's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–3.)

Having exhausted his administrative remedies, Barca appealed the ALJ's decision to this Court.  On July 12, 2012, upon consideration of the Commissioner's assented-to motion for an order voluntarily remanding the claim for further administrative proceedings, the Court remanded the claim back to the Commissioner with instructions consistent with those outlined in the Commissioner's motion.  (AR 1145–47.)  Soon thereafter, the Appeals Council remanded the case to the ALJ, in compliance with the

3

Court's order.  (AR 1153–54.)  The ALJ afforded Barca a second administrative hearing,

which was held on December 13, 2012.  (AR 1069–1116.)  Approximately one month

later, on January 18, 2013, the ALJ issued a new decision, again finding that Barca was

not disabled.  (AR 1044–59.)  The decision became final, and Barca filed the Complaint

in this case on May 2, 2013.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability

claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step

requires the ALJ to determine whether the claimant is presently engaging in "substantial

gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so

engaged, step two requires the ALJ to determine whether the claimant has a "severe

impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant

has a severe impairment, the third step requires the ALJ to make a determination as to

whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The

claimant is presumptively disabled if his or her impairment meets or equals a listed

impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the

claimant's residual functional capacity ("RFC"), which means the most the claimant can

still do despite his or her mental and physical limitations based on all the relevant

medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1),

416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the

4

claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that, although Barca had engaged in *some* work activity after the alleged disability onset date, he had not engaged in substantial gainful activity ("SGA").  (AR 1046–47.)  At step two, the ALJ found that Barca had the following severe impairments: depression, anxiety, and cluster B personality traits.  (AR 1047.)  Conversely, the ALJ found that Barca's hypertension, recurrent cellulitis of the right lower leg, and obesity, were non-severe.  (AR 1047–49.)  At step three, the ALJ found that none of Barca's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 1049–51.)

Next, the ALJ determined that Barca had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Barca] retains the ability to understand and remember one[-]to[-]two[-]step tasks; he would be limited from high-stress tasks due to [a] low stress tolerance but otherwise he would be capable of sustaining concentration, persistence, or pace for two[-]hour blocks of time throughout an eight-hour workday and forty-hour workweek; he could collaborate with co[]workers

> or supervisors but should be limited from high-stress interactions with the
> public and co[]workers; and he could set goals, recognize hazards, travel,
> and manage routine changes.

(AR 1051.)  Given this RFC, and relying on the VE's testimony from the April 2011

administrative hearing, the ALJ found that Barca was capable of performing his past

relevant work as a road flagger and a sales associate.  (AR 1057.)  Alternatively, again

relying on the VE's testimony from the April 2011 hearing, the ALJ found that there are

other jobs existing in significant numbers in the national economy that Barca could

perform, including the jobs of cleaner, warehouse worker, groundskeeper, courier, mail

clerk, and chambermaid.  (AR 1058.)  The ALJ concluded that Barca had not been under

a disability from the alleged onset date of June 28, 2008 through the date last insured of

December 31, 2012.  (AR 1059.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  A person will be found disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work[,] but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

<u>Analysis</u>

**I.    ALJ's Analysis of the Relevant Medical Opinions**

Barca claims the ALJ erred in rejecting the opinions of the treating and examining providers in favor of the opinions of the non-examining agency consultants.  For the reasons explained below, the Court finds no error.

## A.    Dr. Tonino

In a March 2010 letter, Dr. Richard Tonino, Barca's treating primary care physician, stated that he "support[ed] [Barca's] inability to work" based on Barca's "chronic psychologic[al] problems of attention deficit [disorder], anxiety[,] and depression."  (AR 428.)  Dr. Tonino also referenced Barca's problems with hypertension and cellulitis, as well as Barca's multiple life stressors including domestic issues and court cases.  (*Id.*)  Dr. Tonino stated that Barca "is impaired and unable to work at this time."  (*Id.*)  Also in March 2010, Dr. Tonino completed mental and physical Medical Source Statements ("MSSs"), wherein he opined that Barca had significant functional restrictions in lifting, carrying, standing, and walking; and at least marked limitations in most mental functional areas.  (AR 420, 422, 424–28.)  The ALJ assigned "limited weight" to these opinions.  (AR 1049, 1055.)

Under the treating physician rule, a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well []supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993).  The deference given to a treating physician's opinion may be reduced, however, in consideration of other factors, including the length and nature of the physician's relationship with the claimant, the extent to which the medical evidence supports the physician's opinion, whether the physician is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors "which tend to . . . contradict the

opinion." 20 C.F.R. § 404.1527(c)(2)–(6); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). If the ALJ gives less than controlling weight to a treating physician's opinions, he must "give good reasons" in support of that decision. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted).

Recognizing that Dr. Tonino was a treating physician, and considering the factors listed above, the ALJ assigned limited weight to Dr. Tonino's opinions for several "good reasons." First, the ALJ found that Dr. Tonino's opinions appeared to be based on Barca's "subjective testimony rather than [on] Dr. Tonino's independent opinion[s] as [Barca's] . . . physician," thereby "call[ing] into question whether Dr. Tonino based his opinion[s] on his own objective findings and observation, or rather just [Barca's] statement[s]." (AR 1049.) In support of this finding, the ALJ accurately noted that Dr. Tonino stated as follows in his physical MSS (*id.*): "*[Barca] states* [his high blood pressure is] affected by lifting" (AR 424 (emphasis added)). The ALJ also found that Dr. Tonino's own treatment notes do not support his "rather drastic [physical] limitations," and instead document only a "sporadic, at best," history of cellulitis with no symptoms actively extending over time. (AR 1049.) As stated above, supportability and consistency are proper factors for an ALJ to consider in assessing a treating physician opinion. *See* 20 CFR § 404.1527(c)(3)–(4). Moreover, ALJs are not required to adopt a treating physician opinion if it is based on the claimant's subjective allegations. *Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002). Thus, the ALJ did not err in considering the supportability and consistency of Dr. Tonino's opinions in assessing their weight. Moreover, substantial evidence supports the ALJ's findings regarding these factors.

As noted by the ALJ (AR 1048), during the alleged disability period, Barca reported flares of cellulitis on only a few occasions, including in October 2009, September 2011, and May 2012; and the record does not reflect that these flares lasted for more than two or three weeks.  (*See, e.g.*, AR 399, 430–37, 1368–73, 1380–85, 1437.) As for Barca's high blood pressure, the record does not indicate that it affected Barca's ability to work.  (*See, e.g.*, AR 1441.)  And, as the ALJ pointed out (AR 1047), Barca was not compliant in taking his blood pressure medications (*see, e.g.*, AR 347, 396, 913–14, 922, 924–25, 1437), another proper factor for the ALJ to consider in assessing a treating physician's opinions, *see Calabrese v. Astrue*, 358 F. App'x 274, 277–78 (2d Cir. 2009); 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled.").

The ALJ also justified his assessment of Dr. Tonino's opinions by accurately stating that Dr. Tonino's belief that Barca is "unable to work" (AR 428) is "an issue reserved for the Commissioner," and thus deserving of only limited weight (AR 1055). The regulations provide that "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," 20 C.F.R. § 404.1527(d)(1), because whether a claimant is disabled or unable to work is an "administrative finding[] that [is] dispositive of [the] case," and thus is an issue reserved to the Commissioner, *id.* at § 404.1527(d).

Another "good reason" the ALJ provided in support of his decision to afford only limited weight to Dr. Tonino's opinions is that the MSS forms on which they were made required Dr. Tonino to "check marked limitations or nothing at all, with no ability to

10

discern which categories were mildly limited or moderately limited, and no ability to provide extensive narrative support for his findings." (AR 1055.) Moreover, to the extent that the forms allowed Dr. Tonino to add narrative explanation, as noted by the ALJ (*id.*), the Doctor failed to do so in a meaningful way. Rather, Dr. Tonino summarily wrote that Barca suffered from adjustment disorder and stress, anxiety, depression, and PTSD; and that "criticism affects [Barca's] self[-]esteem which negatively affects [his] performance." (AR 422.) There is no explanation of what particular symptoms or objective evidence demonstrate that Barca was as severely functionally limited as Dr. Tonino opined in his March 2010 opinions. This is a significant omission, considering that the record contains objective evidence contradicting the level of physical and mental limitation opined by Dr. Tonino. For example, in contrast with Dr. Tonino's opinion that Barca was markedly limited in his ability to understand, remember, and concentrate (AR 420), several treatment notes describe Barca's memory and concentration as within normal limits or intact (AR 311, 333, 336, 339, 342, 1280, 1284, 1451). And despite Dr. Tonino's opinion that Barca was markedly limited in his ability to function socially (AR 422), the record demonstrates that Barca was able to effectively interact with his medical providers, members of his church, and governmental agencies to obtain subsidized housing (AR 1280, 1284, 1563–68, 1653), all of which required an ability to socialize.

Finally, the ALJ noted that, before making his March 2010 opinion that Barca could not work, Dr. Tonino inconsistently stated—on multiple occasions—that Barca *could* and even *should* work. (AR 1055.) This was another proper factor for the ALJ to consider in assessing the weight of Dr. Tonino's opinions. *See Michels v. Astrue*, 297 F.

App'x 74, 75–76 (2d Cir. 2008) (given inconsistencies in treating physician's opinions,

ALJ "was free to discount [these] opinions in favor of a broader view of the medical

evidence"); 20 C.F.R. § 404.1527(c)(4) (stating that "[c]onsistency" is a factor in

deciding the weight accorded to medical opinions).  Moreover, substantial evidence

supports this finding.  Dr. Tonino stated in a February 2009 treatment note: "I think work

would be therapeutic for [Barca] and [would] address his goal to provide for his family."

(AR 347.)  In a June 2009 treatment note, Dr. Tonino recorded that he "[r]ecommend[ed]

no [d]isability."  (AR 397.)  In a September 2009 treatment note, Dr. Tonino stated:

"[Barca] wants to apply for disability but I think he should work."  (AR 392.)  All of

these statements were made during the alleged disability period.  Moreover, in the

September 2009 note, Dr. Tonino stated that Barca "holds a job at Price Chopper," where

there was a problem with "insufficient hours"; there is no mention of Barca's inability to

perform the job due to an impairment.  (*Id.*)  Approximately six months later, Dr. Tonino

wrote his March 2010 letter stating that he "support[ed] [Barca's] inability to work."

(AR 428.)  The only possible explanation for Dr. Tonino's drastic change in opinion—

from encouraging Barca to work to stating he was unable to work—was a statement in

his March 2010 letter that Barca's "recent stress from multiple domestic and legal

sources, including divorce, child support and visitation issues, and court cases[,] . . .

significantly increased his psychologic[al] problems as well as increasing blood pressure

despite treatment."  (*Id.*)  There is no indication in Dr. Tonino's opinions or treatment

notes, or elsewhere in the record, that there was a deterioration in Barca's physical or

mental condition from when Dr. Tonino made his 2009 opinions until he made his March

2010 opinions.  And clearly, an increase in life stressors is insufficient grounds to find a claimant disabled.

For these reasons, the Court finds that the ALJ gave "good reasons," supported by substantial evidence, for affording limited weight to Dr. Tonino's opinions.

### B.    Agency Consultants Drs. Patalano and Farrell

Another good reason to afford limited weight to Dr. Tonino's opinions is that they are not consistent with those of the non-examining consulting agency psychologists, Drs. Joseph Patalano and William Farrell.  In 2009, after reviewing the record, these consultants opined that despite his impairments, Barca retained the capacity to understand and remember one-to-two-step tasks; was limited in his ability to perform high-stress tasks due to a low stress tolerance; would have occasional problems with concentration and persistence due to intermittent increases in anxiety and depression associated with environmental stressors which would temporarily undermine his cognitive efficiency; was otherwise capable of sustaining concentration, persistence, and pace for two-hour periods; could collaborate with supervisors and coworkers but was limited in his ability to have high-stress interactions with the public and coworkers; and could set goals, recognize hazards, travel, and manage routine changes in a low-stress setting.  (AR 385, 417.)

The ALJ afforded "great weight" to these opinions.  (AR 1054.)  Acknowledging that Drs. Patalano and Farrell "did not personally examine [Barca]," the ALJ stated that their assessments were "reasonable" in light of Barca's "generally normal clinical presentation," "significant work activity after the alleged onset date," "ability to live and

13

maintain his home well independently," and ability to "engage in his church community."

(AR 1054–55; *see also* AR 1653.)  Barca does not challenge these factual findings.

Instead, he argues that the ALJ should not have afforded significant weight to the agency

consultant opinions because they were prepared before the medical record, including

several treating provider opinions, was complete.  (Doc. 9 at 16.)  In particular, Barca

points out that Drs. Patalano and Farrell prepared their opinions before Dr. Tonino

offered his March 2010 opinions.  (*Id.*)  As explained above, however, the ALJ properly

afforded limited weight to those opinions.

Generally, in cases where it is unclear whether the consulting agency physicians

reviewed all of the claimant's relevant medical information, these opinions will not

override those of the treating physicians.  *Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir.

2011).  But where the consultant opinions are supported by the record and there is no

evidence of a new diagnosis or a worsening of the claimant's condition after the

consultant opinions were made, the ALJ may rely on them.  *Charbonneau v. Astrue*, Civil

Action No. 2:11–CV–9, 2012 WL 287561, at *7 (D. Vt. Jan. 31, 2012).  The ALJ in this

case acknowledged that "the record contains significant evidence submitted after the

assessments of Drs. Patalano and Farrell," but found that this subsequent evidence "is not

generally inconsistent with the material used in their reports and it overall continues to

support their positions."  (AR 1055.)  The record supports these findings, and does not

demonstrate a permanent or prolonged deterioration in Barca's condition after Drs.

Patalano and Farrell prepared their assessments.

Barca points out that the assessments of Drs. Patalano and Farrell were prepared before his March 2011 medication overdose and subsequent hospitalization.  (AR 986–1000.)  But the record reflects that the hospitalization lasted for only one day.  (AR 986–87.)  By November 2011, Barca was noted to be cooperative, pleasant, appropriately dressed, and exhibiting intact memory at a psychiatric evaluation.  (AR 1280.)  The evaluator, Dr. E.M. Kaufman, a psychiatrist at Northeast Kingdom Human Services ("Northeast"), assigned Barca a Global Assessment of Functioning ("GAF") score of 65–70, indicating only mild symptoms.[1]  (AR 1281.)  Other records from Northeast indicate that Barca improved after his March 2011 hospitalization, and was able to function at a relatively high level, even running his own taxi business.

For example, during Barca's June 2011 Intake Evaluation at Northeast, although Barca presented with "depressed mood and constricted affect," he exhibited "fair" insight and judgment, presented with "good ideas for recovery," and "seemed to develop a good rapport" with the evaluator, Dr. Kaufman.  (AR 1284.)  A February 22, 2012 note states: "Reflected on his faith and some of the community connections he has gained from his business."  (AR 1635.)  A May 9, 2012 note states: "Reflected on different apartments and the options certain living situations present over others.  Continued to discuss his efforts to get his taxi business running again."  (AR 1631.)  A May 30, 2012 note states:

---

[1]  "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'"  *Kohler v. Astrue*, 546 F.3d 260, 262, n.1 (2d Cir. 2008) (quoting *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")*, at 32 (4th ed. 2000)).  A GAF in the range of 61 to 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but *generally functioning pretty well*, has some meaningful interpersonal relationships."  *DSM–IV*, at 34 (emphasis added).

"began to discuss his expectations around relationships and certain business ventures he is pursuing."  (AR 1628.)  A July 11, 2012 note states: "seems content with the resources he has integrated into his life to help him manage[, but], he also still has a sense of entitlement that may need addressing in treatment."  (AR 1626.)  Notes from the VA also indicate that Barca was functioning at a fairly high level, successfully coordinating with his church, federal agencies, and private individuals to avoid homelessness and secure housing.  (AR 1563–68.)  Particularly noteworthy, and mentioned in the ALJ's decision (AR 1054), in September 2012, a VA provider recorded that Barca told him he was "cautious" about working "for fear of not helping his social security disability case" (AR 1584), suggesting that Barca's impairments were not the principal factor preventing him from working.

In sum, there is substantial evidence to support the ALJ's assignment of great weight to the assessments of Drs. Patalano and Farrell.  And the evidence post-dating those assessments does not demonstrate that Barca's condition deteriorated for more than a short period.  Although generally the opinions of treating physicians are entitled to more weight than those of non-examining agency consultants, the regulations clearly permit the opinions of the latter to override those of the former, when the consultant opinions are more consistent with the record than the treating physician opinions.  *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing *Schisler v. Sullivan*, 3 F.3d 563, 567–68 (2d Cir. 1993)) ("[T]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record."); SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate

circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").  The opinions of consultants Drs. Patalano and Farrell are consistent with the record, which documents Barca's ability to independently care for himself, work at different jobs at least for limited periods during the alleged disability period (discussed in more detail below), interact with members of the community, and advocate for himself in obtaining assistance with housing.  These opinions are also consistent with the pre-March 2010 opinions of Dr. Tonino, discussed above.

### C.   Dr. Rebhun

Barca also contends that the ALJ did not properly assess the opinions of Dr. Scott Rebhun, a psychiatrist who treated Barca at the VA Clinic beginning in June 2012.  (AR 1286–97, 1495–1501.)  In November 2012, Dr. Rebhun completed the same limited check-the-box form that Dr. Tonino completed in March 2010, opining, like Dr. Tonino, that Barca was "markedly limited or effectively precluded" from performing work tasks in most areas of mental functioning.  (AR 1666–67.)  Dr. Rebhun wrote: "Barca has severe PTSD and depression and has been unable to work for some time."  (AR 1667.)

The ALJ gave "limited weight" to Dr. Rebhun's opinions on the grounds that (1) Dr. Rebhun had only treated Barca for approximately five months when he made his opinions; (2) the marked deficits contained in Dr. Rebhun's opinions are not well supported by the objective clinical examinations; and (3) Dr. Rebhun's conclusion that Barca could not work is not well supported by the record as a whole, "which documents work activity in several positions, including as a self-employed taxi driver, after the

17

alleged onset date." (AR 1057.) These are all appropriate factors for the ALJ to consider in assessing the weight of Dr. Rebhun's opinions[2], *see* 20 CFR § 404.1527(c), and substantial evidence supports the ALJ's findings, as discussed above. Moreover, Dr. Rebhun's own treatment notes do not support his opinions, recording that, although Barca was depressed and morbidly obese, he exhibited mostly normal findings upon examination, including normal cognition, thought process, insight, and judgment. (AR 1287, 1296, 1548, 1657.)

Regarding Barca's work activity, the record clearly documents that Barca worked at various jobs during the alleged disability period: for example, he worked at Price Chopper in 2009 and as a self-employed taxi driver in approximately 2011. (AR 392, 938, 1094–95, 1548, 1584.) Also noteworthy, just before the alleged disability onset date, Barca maintained employment with Deter Security for approximately five years. (AR 211, 256.) As noted by the ALJ (AR 1053), that job ended on approximately the alleged onset date, not due to Barca's physical or mental problems performing the job, but rather due to his theft of property from a client. (AR 256–57.) The employer summarized Barca's performance in that job as "average, until he stole from our client." (AR 257.) Barca contends the ALJ should not have considered this work activity without first determining whether the jobs constituted SGA. (Doc. 9 at 7.) In fact, the ALJ

---

[2] Barca asserts that the ALJ "really considered only one factor, the length of the treatment relationship," in assessing Dr. Rebhun's opinions. (Doc. 9 at 5.) Not only does this argument fail on the facts (*see* AR 1057, where the ALJ explicitly considered multiple factors in considering Dr. Rebhun's opinions), but it is also not supported by the law, given that the Second Circuit does not require "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation[s] are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004) (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed")).

explicitly stated in his decision that, although Barca engaged in some work activity during the relevant period, it did not rise to the level of SGA.[3]  (AR 1046–47.) Nonetheless, it was proper for the ALJ to consider these work activities in deciding what weight to assign to the medical opinions.  *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("[T]he fact that [the claimant] could perform some work cuts against his claim that he was totally disabled.").

> ### D.    Dr. Williams

The ALJ also considered the October 2011 opinion of consultative psychologist Theodore Williams.  (AR 1449–52.)  Dr. Williams diagnosed "Major Depressive Disorder, Single Episode, Moderate to Severe without Psychotic Features," and opined that Barca "will likely experience significant difficulty engaging in many of the activities necessary for daily living[,] given the severity of his depression and anger management deficits."  (AR 1452.)  The ALJ gave "limited weight" to this opinion for multiple reasons, including that Dr. Williams was not a treating, but rather a consulting, physician who saw Barca only one time; and that Dr. Williams's opinion is unsupported by the

---

[3]  After citing the relevant records, the ALJ stated:

> [T]hese records support a finding that [Barca] has been engaging in significant work activity after the alleged onset date.  Although I by no means imply that because [he] performed each of these jobs on a part-time basis he could sustain them full[]time, I find that [his] highly inconsistent and inaccurate testimony concerning the length and extent of his work activity calls into question his credibility as a general matter.

(AR 1054.)

other evidence of record, "most notably the frequent home visits with the Veteran's

Administration, where [Barca] was noted to be excited to move into his own place,

decorate it himself with donated items, and keep the space neat and tidy."  (AR 1056; *see*

*also* AR 1653 (keeping apartment "neat and tidy").)  The extent of Dr. Williams's

treatment relationship with Barca and the supportability and consistency of Dr. Wiliams's

opinions were proper factors for the ALJ to consider in assessing the value of Dr.

Williams's opinions.  *See* 20 C.F.R. § 404.1527(c)(2)–(4).  Moreover, for the same

reasons discussed above, substantial evidence supports the ALJ's finding that the

opinions are not well supported by the record.  Regarding Barca's ability to perform

activities of daily living, other providers have found that Barca was able to perform these

activities on his own (*see, e.g.*, AR 311), and Barca himself reported in a Function Report

that he was able to independently clean his house, care for his children, perform personal

care activities, and prepare meals (*see* AR 267–69).

     **E.**    **Counselors Graveline, Gonter-Gross, and Gauthier**

     Finally, Barca claims that the ALJ improperly assessed the opinions of Counselors

David Gauthier, Tony Graveline, and Frances Gonter-Gross.  (Doc. 9 at 10–12.)

Gauthier's opinion is contained in a two-sentence April 2010 letter, wherein he stated that

Barca "is unable to be employed at this point in time" due to anxiety, depression, and

physical problems, all of which "limit[] his overall ability to function and are expected to

be unchanged for an indefinite period of time."  (AR 429.)  Graveline and Gonter-Gross

made a joint opinion in November 2012 using the same limited check-the-box form that

Drs. Tonino and Rebhun used, indicating that Barca was at least markedly limited in

several mental functional areas and stating that Barca suffers from anxiety and depression relating to childhood trauma, causing extreme isolation, suicidal ideation and attempts, ineffective personal relationships, and loss of interest in activities.  (AR 166465.)

The ALJ afforded "limited weight" to the opinions of Counselors Gauthier, Graveline, and Gonter-Gross for several reasons: (1) none of these counselors is an acceptable medical source, and Graveline and Gonter-Gross are licensed drug and alcohol counselors not licensed mental health counselors; (2) Gauthier's opinion is "merely a statement of disability, which is an issue reserved for the Commissioner"; (3) Gauthier's opinion that Barca cannot be employed as of the date of the letter is "inconsistent with the prior earnings records of [Barca], which detailed significant earnings in 2008, 2009, and 2010"; and (4) the marked limitations contained in the opinion of Graveline and Gonter-Gross is supported by neither the objective medical evidence nor the narrative assessments contained therein.  (AR 1056.)

As pointed out by the Commissioner, Barca does not argue that these reasons are legally improper or unsupported by substantial evidence.  And in fact, the specialty of a provider, whether the provider's opinion is on an issue reserved to the Commissioner, whether the provider's opinion is supported and consistent with the record, and whether the claimant was able to work during the relevant period, are all proper factors for ALJs to consider in assessing the weight of treating provider opinions, as discussed above.  *See* 20 C.F.R. § 404.1527(c)(3)–(5), (d)(1); 20 C.F.R. § 404.1571.  Moreover, the ALJs factual findings regarding these factors are supported by substantial weight, as also discussed above.  The ALJ's statement that Counselors Gauthier, Graveline, and Gonter-

Gross are not "acceptable medical sources" is also legally proper and factually accurate. Sources such as counselors and therapists are defined in the regulations as "other sources," 20 C.F.R. § 404.1513(d), rather than "acceptable medical sources" like licensed physicians and psychologists, *id.* at § 404.1513(a). Although these "other source" opinions may be used "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work," 20 C.F.R. § 404.1513(d)(1), ALJs are not required to evaluate them in the same manner as required under the treating physician rule, 20 C.F.R. § 404.1527(a)(2). *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *Duran v. Comm'r of Soc. Sec.*, 296 F. App'x 134, 136 (2d Cir. 2008) (finding no error in ALJ decision to disregard assessment of "medical records physician" because it was not from an acceptable medical source and did not include clinical findings).

Accordingly, the Court finds that the ALJ adequately explained the weight afforded to the opinions of Counselors Gauthier, Graveline, and Gonter-Gross, and substantial evidence supports the ALJ's analysis.

## II.     ALJ's RFC Determination

Barca contends that, even if the ALJ was correct in assigning significant weight to the opinions of agency consultants Drs. Patalano and Farrell, his RFC determination "does not . . . match [that] given by [these] experts." (Doc. 9 at 19.) Specifically, Barca claims the opinions of these providers differ from the ALJ's RFC determination regarding (a) Barca's ability to maintain concentration and persistence, and (b) Barca's ability to work in anything more than a low-stress setting. (*Id.* at 17–19; *see also* Doc. 13 at 3–5.)

Drs. Patalano and Farrell assessed Barca's ability to concentrate and handle stress as follows:

> [Barca is] limited [from] high[-]stress tasks bec[ause] of low stress tolerance. [He] will have occasional prob[lem]s with [concentration and persistence] due to intermittent increases in [anxiety and depression symptoms associated] with environmental stressors which temp[orarily] undermine cognitive efficiency. Otherwise, from a psych[iatric] standpoint, [he is] capable of sustaining [concentration, persistence, and pace] for 2[-hour] [periods].

(AR 385, 417.) The consultants also stated that Barca could "manage routine changes in [a] low[-]stress setting." (*Id.*) The ALJ's RFC determination incorporates these limitations by stating: "[Barca] would be limited from high-stress tasks due to [a] low stress tolerance[,] but otherwise he would be capable of sustaining concentration, persistence, or pace for two[-]hour blocks of time . . . ." (AR 1051.) Contrary to Barca's assertion, the language of the consultant opinions plainly indicates that their assessed limitations regarding "occasional" concentration problems elaborated on their initial statement (above) that Barca was limited from high-stress tasks. More importantly, the consultants clearly concluded that Barca was capable of sustaining concentration, persistence, and pace for two-hour periods; and the ALJ adopted that limitation virtually word-for-word.

Regarding the argument that the ALJ should have included a specific limitation that Barca could work only in a "low[-]stress setting" (Doc. 9 at 19), this Court has previously determined that, where, as here, the ALJ relies on a reviewing doctor's opinion; that opinion includes a restriction to working in a low-stress setting; and the ALJ does not include that restriction in his RFC determination but does include a general

limitation from high-stress work, there is no error.  *See Zokaitis v. Astrue*, Civil Action

No. 1:10–CV–30, 2010 WL 5140576, at *10–11 (D. Vt. Oct. 28, 2010).  Moreover, it is

Barca's burden to prove that he was incapable of performing his past relevant work, and

he has failed to demonstrate that his past work as a road flagger or a sales associate

involved more stress than he could manage.  *Id.* (at step four, plaintiff did not

demonstrate that she could not perform her past work as a cashier because she failed to

establish that the job was performed in a high-stress context).

Also noteworthy, the ALJ did not rely solely on the consultants' opinions in

formulating his RFC determination.  Rather, it is apparent from his decision that he

considered all the relevant evidence, including particularly Barca's lack of credibility

(discussed in more detail below) and his ability to engage in fairly robust daily activities.

The ALJ's consideration of the record as a whole in determining Barca's RFC complied

with the regulations, which provide that the ALJ must assess the claimant's RFC "based

on all the relevant evidence in [the] case record," not based on the medical evidence

alone.  20 C.F.R. § 404.1545(a)(1).

## III.    ALJ's Reliance on VE Testimony from April 2011 Hearing

Barca finds fault with the ALJ's reliance, "without any notice to counsel," on

testimony from the VE at the initial administrative hearing held in April 2011.  (Doc. 9 at

19.)  Barca asserts that this lack of notice "made it impossible for counsel to know that he

should have cross-examined the [VE] on issues and questions raised by the ALJ in the

first hearing, not just the issues and testimony in the *de novo* second hearing."  (*Id.*)

According to Barca, the ALJ's reliance on the VE's testimony from the initial hearing

24

violated the District Court's July 2012 Order vacating the ALJ's initial decision and remanding for a *de novo* hearing, and denied Barca his due process rights.  (*Id.* at 19–20.)

As Barca admits (*id.* at 19), there is no law to support this argument.  Moreover, Barca fails to state how he was prejudiced by the ALJ's reliance on the VE's testimony from the initial hearing.  Barca's counsel states merely that he would have cross-examined the VE at the second hearing regarding questions raised in the initial hearing, had he known the ALJ was going to rely on the VE's testimony from the initial hearing.  But the Commissioner accurately points out that Barca was represented by counsel at the initial hearing, and that counsel had the opportunity to cross-examine the VE.  (Doc. 12-1 at 25.)

## IV.    Testimony of Craig Stephens

Barca also finds fault with the ALJ's failure to consider the testimony of Craig Stephens, Barca's former brother-in-law, who testified at the second administrative hearing.  (Doc. 9 at 20; Doc. 13 at 10–11.)  Stephens testified that, during the time that Barca lived with him and his family, there were many problems, the biggest one stemming from Barca's "lack of honesty."  (AR 1098–1100, 1105.)  Stephens stated: "I don't find [Barca] to be an honest person.  And I can't recommend someone like that for employment and I would not hire him personally."  (AR 1104.)  Stephens also stated that Barca was depressed, emotionally unstable, anxious when out in public, and unreliable. (AR 1100, 1102–03, 1106.)  Despite these mental problems, Stephens testified that Barca's hardware job "was helping him to get out of his depression," although he was unable to do that job because of his "physical inabilities."  (AR 1104.)  In sum, Stephens

testified that Barca was able to do his hardware job but for his physical impairments and lack of credibility.  Stephens did not testify in any detail, however, about Barca's physical impairments, merely stating that Barca experienced "physical[] strain" preventing him from being able to run errands with Stephens's family for long periods (AR 1100), and that he would occasionally be bothered by leg pain (AR 1101).

Stephens's lay witness testimony neither contradicts the ALJ's decision nor provides clear support for Barca's claim.  In fact, Stephens's testimony supports the ALJ's assessment that Barca's statements about the intensity, persistence, and limiting effects of his symptoms was not entirely credible.[4]  (AR 1052–57.)  Thus, the testimony was not critical to the adjudication of Barca's application, and the ALJ was not required to consider it.  *See Burden v. Astrue*, 588 F. Supp. 2d 269, 278 (D. Conn. 2008) (discussing Second Circuit authority supporting proposition that ALJs must make credibility findings regarding lay witness testimony "only when that testimony is critical to the adjudication of an application[; and] [t]estimony is critical to the adjudication of an application when the failure to address such testimony undermines the ALJ's decision, *e.g.*, when the testimony ignored is that of the claimant herself") (citing *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)).  Even ignoring this fact, the ALJ's failure to discuss Stephens's testimony does not warrant remand because, to the extent such testimony could be interpreted as supporting Barca's position, it is not corroborated

---

[4]  In fact, the ALJ's decision is based in large part on the ALJ's negative assessment of Barca's credibility, including justification with citation to the record.  (AR 1052–57.)  Barca does not challenge this assessment, and the Court gives deference to it, finding it to be supported by substantial evidence.  *See Carroll v. Sec. of Health and Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("It is the function of the [Commissioner], not [the court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.").

by objective medical evidence and is outweighed by other evidence discussed above, including records indicating that Barca had generally normal clinical presentations, held numerous jobs during the alleged disability period, lived and maintained his home independently, and engaged with his church community.  *See Backus v. Astrue*, No. 3:05–CV–1180 (NAM), 2008 WL 4519006, at *13 (N.D.N.Y. Sept. 29, 2008) ("an ALJ is not required to credit lay witness testimony in the absence of corroborating objective medical evidence"); *Burden*, 588 F. Supp. 2d at 278 (lay witness's credibility need not be assessed where substantially outweighed by record evidence).

## <u>Conclusion</u>

For these reasons, the Court DENIES Barca's motion (Doc. 9), GRANTS the Commissioner's motion (Doc. 12), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 23rd day of January, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge